The undersigned have reviewed the award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission.
The appealing parties have shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications in the award of compensation. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their respresentatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the parties.
3. Aetna Casualty and Surety is the carrier who covered the risk for the defendant-employer at the relevant time.
4. The parties stipulated certain documents into evidence in this matter. Said documents are as follows:
a. Industrial Commission Form 22 Wage Chart
b. Records from Alexander Community Hospital
c. Records from Foothills Mental Health Center
d. Records from Catawba Memorial Hospital
e. Records from Frye Regional Medical Center
f. Records from Jeffery Katz, P.A.
g. Records from Dr. O'Connor
h. Records from Dr. John F. Fannehill
i. Records from Dr. William E. Mitchell
j. Records from Harris Community Hospital
 k. Dates of missed work as stated in letter dated May 3, 1996, from defendant's attorney to the Deputy Commissioner.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner the plaintiff was a forty-one year old female. She has an eighth-grade education.
2. The plaintiff started her employment with the defendant-employer in 1989. She was employed as a sock boarder. The plaintiff's job duties included placing wet socks on a foot shaped apparatus and running them through a machine which included a drying process.
3. On December 22, 1992, the plaintiff bent to remove wet socks from the bottom of a cardboard box which was waist high. In the process of removing the socks from the box, she heard something pop in her back and felt the onset of pain.
4. The plaintiff testified that she has had back pain since the December 22, 1992 incident.
5. The plaintiff was diagnosed with chronic back pain on November 6, 1981 as the result of a back injury which the plaintiff had suffered in May of 1981.
6. The plaintiff was also treated for back pain in February 11, 1987, September 9, 1991, and December 16, 1991. She also has preexisting chronic depression.
7. The plaintiff received treatment for her back pain from Dr. Grey Winfield, an orthopedist, on January 12, 1993 and January 20, 1993. The plaintiff underwent certain diagnostic tests on January 29, 1993 and further tests on May 31, 1993. The test in May did not reveal any significant findings. Plaintiff was diagnosed with low back strain.
8. Plaintiff returned to work mid-April 1993 on a light-duty, four-hour per day basis to her regular job with a co-worker lifting the socks for her. In mid-May plaintiff left work and did not return. On May 27, 1993, she saw Dr. Winfield who took her out of work due to increased leg and back pain.
9. Although Dr. Winfield returned plaintiff to work with no restrictions on June 11, 1993, he later took her out of work again on September 9, 1993.
10. Plaintiff began receiving vocational rehabilitation assistance from North Carolina Vocational Rehabilitation Services in August 1993. Through this agency's efforts plaintiff was referred to Dr. David Kelly, Chairman of the Department of Neurosurgery at North Carolina Baptist Hospital.
11. Dr. Kelly saw plaintiff one time on December 7, 1993. After a myleogram and CAT scan, Dr. Kelly diagnosed plaintiff with degenerative disc disease and a mild bulging disc at L5-S1. Plaintiff has work restrictions of no heavy lifting and avoiding bending. There is no evidence in the medical records that plaintiff has reached maximum medical improvement, and no rating for permanent functional impairment to her back has been assigned.
12. Plaintiff has made limited efforts to find work on her own. Vocational Rehabilitation sent her to a job-seeking skills course, which she did not complete. In addition, plaintiff failed to attend the sheltered workshop recommended by Vocational Rehabilitation, for sessions beginning July 5, 1994, July 25, 1994, and October 17, 1994. Although the vocational rehabilitation counselor believed that she could find a job for plaintiff, she preferred for plaintiff to first attend the sheltered workshop. The sheltered workshop is an eight-week evaluation process and pays less than minimum wage. During the workshop, participants increase work stamina by working up to six hours per day, and work evaluations are completed by workshop reports and client counselor discussions. Attendance at the sheltered workshop is necessary to evaluate plaintiff's work capabilities in order to place her in a job.
13. As a result of the December 22, 1992 incident, plaintiff was unable to work from January 11, 1993 through April 18, 1993; from May 3, 1993 through May 10, 1993; and from May 17, 1993 continuing thereafter. Defendant has not offered plaintiff any work suitable to her capacity to earn wages.
14. The plaintiff's average weekly wage of $196.21 yields a weekly compensation rate of $130.82.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 22, 1992, the plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer in that she injured her back as a result of a specific traumatic incident while performing her assigned work duties. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff is entitled to temporary total disability benefits at the rate of $130.82 per week for the periods from January 11, 1993 through April 18, 1993; from May 3, 1993 through May 10, 1993; and from May 17, 1993 continuing thereafter until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29. Payment of this compensation is subject to suspension for any failure by plaintiff to cooperate with vocational rehabilitation efforts, as Ordered below. N.C. Gen. Stat. § 97-25.
3. The plaintiff is entitled to medical compensation benefits for all treatment as a result of the December 22, 1992, injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation benefits at the rate of $130.82 per week from January 11, 1993 through April 18, 1993; from May 3, 1993 through May 10, 1993; and from May 17, 1993 continuing until further Order of the Commission. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved below.
2. Defendants shall pay all reasonable medical expenses incurred by the plaintiff as a result of her treatment for her December 22, 1992 injury by accident.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check will be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs of this action.
 ORDER
Plaintiff is HEREBY ORDERED to accept and cooperate with the rehabilitation efforts offered by defendants, including, if considered appropriate at the present time, attendance at the sheltered workshop recommended by the State Vocational Rehabilitation office. Any refusal by plaintiff to accept said rehabilitation efforts shall bar her from further compensation until such refusal ceases.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________ GEORGE T. GLENN, II DEPUTY COMMISSIONER
LKM/bjp